UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC JERMAINE WATSON,

    Petitioner,                         Civil No. 2:20-CV-11062
                                        HONORABLE NANCY G. EDMUNDS
v.                                     UNITED STATES DISTRICT JUDGE

NOAH NAGY,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

Eric Jermaine Watson, ("Petitioner"), confined at the Cooper Street Correctional Facility in Jackson, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions for armed robbery, M.C.L.A. 750.529; felon in possession of a firearm, M.C.L.A. 750.224f; possession of a firearm in the commission of a felony, M.C.L.A. 750.227b; and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> During the early morning hours of July 1, 2016, the victim in this matter was playing dice on a street corner with DaJuan Jones. The two ended up in a

1

disagreement, and the victim fled in fear. The victim fell while running, Jones approached, and held the victim at gunpoint. At that moment, defendant and Richard James Melton, Jr., approached. Jones asked defendant if he should "kill" the victim, to which defendant responded not to shoot. Defendant and Melton then went through the victim's pockets while he was still held at gunpoint. The victim reported that the three men took an LG K7 cellular telephone, $800 in cash, and some cigarettes from him, entered a white Dodge Durango, and defendant drove them away. The victim called 911, reported that he was robbed, and described the aforementioned vehicle. The police identified the white Durango near the scene of the robbery, pulled it over, and discovered defendant driving with Melton in the passenger seat. Jones was not in the car. There were six cellular telephones in the vehicle—one of which was an LG K7 model—and a handgun holster, but no gun. Defendant was found with $1,228 in his pockets.

Later that same day, the victim identified Jones in a photographic lineup. The following day, he identified defendant and Melton in a live lineup. The victim testified at the preliminary examination on August 2, 2016, where defendant and Melton were bound over on the aforementioned charges. Following the preliminary examination, the victim became noncompliant with the prosecution and police. [1]  On October 3, 2016, defendant and Melton were set to be tried together, and the prosecution moved to have the victim's preliminary examination testimony admitted as evidence, citing the victim's unavailability. The prosecution also alleged that defendant and Melton had procured the victim's absence from trial by bribing him. The prosecution introduced jailhouse telephone calls of Melton, in which he openly discussed paying the victim money so that he would not come to trial. The trial court held that certain evidence was admissible as against Melton under the forfeiture-by-wrongdoing rule, MRE 804(b)(6). The trial court refused to attribute Melton's wrongdoing to defendant, disagreeing with the prosecution's theory that Melton was acting on behalf of defendant. The trial court, therefore, ordered that defendant and Melton be tried separately, and adjourned defendant's trial until December 15, 2016. [2]

Before defendant's rescheduled trial date, the prosecution once again moved the trial court to find that the forfeiture-by-wrongdoing rule applied to defendant. The trial court again refused, but did find that the victim was unavailable for trial, and that his preliminary examination testimony was admissible. The trial court also admitted the victim's 911 call recording and his identification of defendant. After two days of trial, the jury convicted defendant of all three charges. At sentencing, the victim came forward, and

---

[1] The charges against Jones, who held the victim at gunpoint, were dismissed during his later preliminary examination when the victim did not appear to testify. (Footnote original).

[2] Melton later pleaded guilty to armed robbery, felon-in-possession, and felony-firearm. He has not appealed his pleas, and is not a party to this appeal. (Footnote original).

2

asserted that he wished to recant his testimony from the preliminary examination. According to defendant, the victim intended to testify that there was no gun present during the robbery. The trial court appointed counsel for the victim so that he would understand the potential for perjury charges, and adjourned defendant's sentencing. During the second sentencing hearing, the victim and his counsel informed the trial court that the victim no longer wished to recant, and if called to testify, he would exercise his Fifth Amendment right against self-incrimination. Defendant was sentenced, and this appeal followed.

Pertinent to this appeal, defendant moved this Court to remand his case to the trial court to hear his motion for a new trial on the basis of newly-discovered evidence. The newly-discovered evidence was the victim's medical records, which revealed a history of mental health issues, and an affidavit from the victim recanting his previous testimony that a gun was present at the robbery. The trial court found that the newly-discovered evidence was not credible, and would not have changed the outcome of trial. Thus, the court denied defendant's motion. The case is now before us for summary consideration.

*People v. Watson*, No. 338110, 2019 WL 3315168, at *1–2 (Mich. Ct. App. July 23, 2019), *lv. den.* 505 Mich. 976, 937 N.W.2d 660 (2020).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court reversibly erred, over a defense objection, in holding that complainant Jermaine Page was unavailable to testify in person at this trial, and that the prosecution thus could read his prior recorded testimony from the preliminary examination to the jury, as the prosecution failed to present a sufficient demonstration of an exercise of due diligence to insure Mr. Page's appearance, thus denying Mr. Watson's constitutional right to confront his accuser.

II. The complainant's documented history of bipolar disorder and delusional thinking and his repeated assertions that he lied when he said a gun was used to rob him is newly discovered evidence warranting retrial.

III. Mr. Watson's conviction for felon in possession of a firearm should be vacated, and the charge dismissed, because the prosecution presented constitutionally insufficient evidence that he aided and abetted the commission of that offense.

IV. The trial court reversibly erred in denying the jury's request to rehear the testimony of the complainant, where that testimony was readily available since it was presented as prior recorded testimony from the preliminary examination, and the testimony of the complainant was critical in the context

of this case; in the alternative, Mr. Watson was denied his Sixth Amendment right to the effective assistance of counsel due to his trial attorney's failure to object to the court's ruling.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Discussion

**A. Claim # 1.  The unavailable witness/Confrontation Clause claim.**

Petitioner first claims that his Sixth Amendment right of confrontation was violated when the judge permitted the prosecution to introduce the victim's preliminary examination testimony after concluding that the victim was unavailable to testify at petitioner's trial.  Petitioner further argues that the prosecution failed to use due diligence to secure the victim's presence at trial.

An exception to the confrontation requirement exists where a witness is unavailable and gave testimony at previous judicial proceedings against the same defendant which was subject to cross-examination.  However, this exception does not apply "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968).  When prosecutors seek to admit a non-testifying witness' preliminary hearing testimony, the Confrontation Clause requires two things: first, the prosecution must establish that the declarant is "unavailable" by showing that prosecutorial authorities have made a good-faith effort to obtain the declarant's presence at trial, and, second, to satisfy the "indicia of reliability" requirement, the prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine the declarant at the preliminary examination. *See Pillette v. Berghuis,* 630 F. Supp. 2d 791, 804 (E.D. Mich. 2009); *rev'd on other grds,* 408 F. App'x 873 (6th Cir. 2010)(*citing McCandless v. Vaughn*, 172 F. 3d 255, 265 (3rd Cir. 1999)).  The lengths to which the prosecution must go to produce a witness, such that the admission of the

5

witness' prior, confronted testimony at subsequent trial does not violate the Confrontation Clause, is a question of reasonableness. *Hardy v. Cross,* 565 U.S. 65, 70 (2011)(*quoting Ohio v. Roberts*, 448 U.S. 56, 74 (1980)). The Supreme Court noted that "when a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." *Id.*, at 71-72. Significantly, "the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken." *Id*. at 72.

The Michigan Court of Appeals rejected petitioner's claim:

Defendant argues on appeal that the trial court erred in determining that the prosecution exercised due diligence and a good-faith effort in its attempts to ensure that the victim was at trial. The issue of the victim's unavailability first arose when defendant and Melton were set to be tried together on October 3, 2016. At that hearing, the prosecution provided the following statement regarding the efforts to locate the victim:

> I had filed recently a motion to introduce the statement of [the victim]. [He] is the only victim, and only civilian witness in this case. He was the victim of an alleged armed robbery that took place on July 1st of this year.
>
> My Officer in Charge, Sergeant Dasumo Mitchell, is currently the Officer in Charge in a homicide case this morning [in another] courtroom, otherwise he would be here today. He had made efforts to locate [the victim] throughout this process. [The victim] did provide testimony at the Preliminary Examination, however recent efforts to location [sic] [him] have failed.
>
> On Friday, this past Friday, on the 30th of September, the People had this court issue a witness detainer for [the victim] to locate him over

6

the weekend. Efforts by the Officer in Charge, Sergeant Dasumo Mitchell, who I believe Detective Dawson who just walked in the courtroom today, was also present during the attempted apprehension of [the victim]. They went to his known address and he was not there.

In addition, Judge, the People have had contact with the grandfather [ ] of [the victim]. I spoke to [the victim's grandfather] on September 29th. He indicated to me that his grandson was not going to come to court, that he had had a conversation with him the previous day in which [the victim] had indicated that he was paid some money to not appear in court.

In addition to all of that, Your Honor, the People have listened to numerous jail calls from both Defendants, Eric Watson and Richard Melton. Over the course of time spanning from July of this year, shortly after the incident, all the way to, I believe it was the end of September of this year, there were approximately eleven phone calls that demonstrates an active participation to secure the absence of [the victim] in this trial.

I have laid out in explicit detail all of the phone calls and the dates of those or those times in which Mr. Melton placed all of those calls, but references not only [Jones] but somebody by the name of Chedda, C-h-e-d-d-a, which through jail calls have been interpreted to be the person identified as [defendant] Eric Watson.

Also, Judge, the way that these jail calls have played out is a systematic and active scheme to try to secure the absence of [the victim]. And today, as of 9:15 or 9:16, [the victim] is nowhere to be found.

I believe Sergeant Dotson can attest to that, and his efforts as well. We have clear information, Judge, that [the victim] was, in fact, paid, that there's an active participation to try to pay by this—by Mr. Melton, as well as through incorporation, Mr. Watson ....

Following those statements by the prosecution, Officer Danny Dotson was called to testify regarding the efforts of the police to locate the victim. He stated that he and Officer Mitchell went to the victim's house and searched local hotels and motels, where they suspected the victim might be staying.

7

>The prosecution further argued that the witness was unavailable because of the jailhouse telephone calls made by Melton. Those telephone calls, which were transcribed in various briefs and the content of which is not challenged, clearly show that Melton was in contact with several people who conspired to pay the victim money so that he would not come to trial.
>
>On the first day of defendant's trial, the prosecution once again moved the trial court to admit the victim's preliminary examination testimony based on his unavailability, and attempted to connect defendant to Melton's procurement of the victim's unavailability by reading defendant's jailhouse telephone calls into the record, the content of which has not been challenged. In those calls, defendant and an unknown caller have vague conversations about ensuring that a "situation" is "straight." Defendant argued, and the trial court agreed, that those conversations by defendant were not specific enough to connect him to Melton's behaviors. Therefore, the trial court held that the victim's absence was not attributable to defendant, so the forfeiture-by-wrongdoing rule, MRE 804(b)(6), was inapplicable.
>
>The trial court did, however, determine that the victim was unavailable under MRE 804(a)(5), and requested that the prosecution update the record regarding the continuing location efforts. The prosecution informed the trial court that Officer Mitchell had continued to search for the victim, without luck, since the previous date of trial, two months earlier. Following the determination by the trial court that the victim was unavailable, defendant objected on the ground that the victim was not at trial because he was a liar, not because he was paid off by Melton. Defendant did not, in any manner, challenge the prosecution's recitation of the efforts made to locate the victim.

*People v. Watson*, 2019 WL 3315168, at * 3–5.

"A good-faith effort...is not an ends-of-the-earth effort, and the lengths to which the prosecution must go to obtain a witness generally amount to a question of reasonableness." *United States v. Cheung*, 350 F. App'x. 19, 23 (6th Cir. 2009)(internal quotation marks, citations, and alterations omitted). The Court concludes, based on the steps taken in this case, that the prosecution and law enforcement made a good faith effort to locate the victim and present him at trial. *See Winn v. Renico,* 175 F. App'x. 728,

8

739 (6th Cir. 2006); See also Pillette, 630 F. Supp. 2d at 804. In addition, it is obvious from the record that the victim was unavailable because he refused to testify after being offered money from the co-defendant. See Mayes v. Sowders, 621 F.2d 850, 856 (6th Cir. 1980) (stating that "[a] witness is not available for full and effective cross-examination when he or she refuses to testify."). Although there may have been additional steps that the trial judge or the prosecutor or the police could have taken to secure the victim's presence, under the AEDPA's deferential standard of review, the Michigan Court of Appeals' rejection of petitioner's claim was a reasonable determination, precluding habeas relief.

In addition, the victim's former preliminary examination testimony bore adequate indicia of reliability because it was made under oath, petitioner and his counsel were present, and the witness was subject to cross-examination. *California v. Green*, 399 U.S. 149, 165-66 (1970); *Pillette,* 630 F. Supp. 2d at 804; *Eastham v. Johnson,* 338 F. Supp. 1278, 1280 (E.D. Mich. 1972). The admission of the preliminary examination testimony at Petitioner's trial did not violate his Sixth Amendment right to confrontation. *See Glenn v. Dallman,* 635 F. 2d 1183, 1187 (6th Cir. 1980); *Havey v. Kropp,* 458 F. 2d 1054, 1057 (6th Cir. 1972); *Pillette,* 630 F. Supp. 2d at 804-05. Petitioner is not entitled to habeas relief on his first claim.

**B. Claim # 2. The newly discovered evidence/actual innocence claim.**

Petitioner argues he is entitled to habeas relief because of newly discovered evidence in the form of the victim's post-trial recantation and the discovery of the victim's mental health records.

To the extent that petitioner seeks habeas relief based on his actual innocence, he would not be entitled to the issuance of a writ. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013)("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d at 854-55 (collecting cases).

Petitioner is not entitled to habeas relief on his claim that the victim recanted his testimony from the preliminary examination.

The Michigan Court of Appeals rejected the claim:

The trial court specifically found the victim's recantation to be "highly suspect and untrustworthy." In making that decision, the trial court first noted the fact that an affidavit of a witness purporting to recant his previous testimony typically is given little weight. See *id*. The trial court also referenced that between the time the victim gave his preliminary examination testimony and the time of his recantation, a very specific reason to recant had arisen. Specifically, the trial court noted that the victim was paid money to avoid appearing at trial. The trial court considered that the victim likely had the same reason for recanting his testimony. Summarizing, the trial court stated, "[a]ny trier of fact could see through common sense and reason that an individual would recant after being pressured and bribed."

*People v. Watson*, 2019 WL 3315168, at * 19.

10

In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). A state court's factual determination that a prosecution witness' recantation and supporting affidavit is not credible is entitled to the presumption of correctness in a federal habeas proceeding. See *Richardson v. Lord,* 7 F. App'x. 1, 2 (2nd Cir. 2001); See also *Poe v. Rapelje,* 5:12–CV–11390; 2014 WL 4715460, * 2 (E.D. Mich. Sept. 22, 2014).

A long-delayed affidavit like the victim's which seeks to exonerate a criminal defendant is "treated with a fair degree of skepticism." *Herrera v. Collins,* 506 U.S. at 423. Recanting affidavits and witnesses are viewed with "extreme suspicion." *United States v. Chambers*, 944 F. 2d 1253, 1264 (6th Cir. 1991); *superseded in part on other grounds by* U.S.S.G. § 2D1.5(a); *See also Byrd v. Collins,* 209 F. 3d 486, 508, n. 16 (6th Cir. 2000). "Where the circumstances surrounding the recantation suggest it is the result of coercion, bribery, or misdealing the [trial] court is justified in disregarding it." *United States v. Johnson*, 487 F.2d 1278, 1279 (4th Cir. 1973). The trial judge concluded that the victim's alleged recantation was suspect, in light of the fact that he had been offered money from the co-defendant not to appear at trial. The state trial judge's ruling was a reasonable determination of the facts and the law. Petitioner is not entitled to relief on this claim.

Petitioner's related claim involving the discovery of the victim's mental health records would also not entitle him to habeas relief. The mental health records did not exonerate petitioner but at most could have been used to impeach the victim's testimony. Impeachment evidence does not provide sufficient evidence of actual innocence to

11

support a free-standing innocence claim. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992). Petitioner is not entitled to relief on his second claim.

### C. Claim # 3. The sufficiency of evidence claim.

Petitioner next claims that there was insufficient evidence to support his conviction for felon in possession of a firearm, because there was no evidence he actually possessed a firearm.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson*

standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

The elements of felon in possession of a firearm in Michigan are: (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *Parker v. Renico,* 506 F. 3d 444, 448 (6th Cir. 2007). Under Michigan law, possession of a firearm can be either actual or constructive. *Id.* (*citing People v. Hill*, 433 Mich. 464; 446 N.W.2d 140, 143 (1989)). Under both federal and Michigan law, "a person has constructive possession if there is proximity to the [weapon] together with indicia of control." *Id.* "Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Parker,* 506 F. 3d at 448, n. 3 (*quoting Hill,* 446 N.W. at 143). "As applied, 'reasonable access' is best calibrated to instances where a defendant commits a crime emboldened by a firearm available, but not in hand." *Id.* The Sixth Circuit notes that "[c]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time

13

to exercise dominion and control over an object, either directly or through others." *Id.* at 449 *(quoting United States v. Craven*, 478 F. 2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977)). Michigan law also recognizes joint possession of a firearm, which allows for a conviction of felon inpossession of a firearm under "the theory of joint firearm possession if the evidence suggests two or more defendants acting in concert." *People v. Hill*, 433 Mich. at 471.

The Michigan Court of Appeals rejected petitioner's claim, finding that the evidence supported a conviction for felon-in-possession under a joint possession theory:

> The prosecution presented evidence that Jones chased down the victim and held him at gunpoint while defendant and Melton went through the victim's pockets, eventually taking cigarettes, a cellular telephone, and $800 in cash. The victim testified that Jones asked defendant if he should "kill" the victim, to which defendant answered not to shoot. Later, when defendant was pulled over by police in the white Durango—in which the victim saw defendant drive away from the scene of the robbery—there was a handgun holster in the vehicle.
>
> On the basis of those facts, a reasonable jury was well-supported in inferring that defendant and Jones were "acting in concert," and thus, jointly possessed the firearm that Jones held. It was the jury's role "to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." Here, the jury inferred from the foregoing evidence that defendant and Jones were working together—Jones held the gun while defendant relieved the victim of his property and cash. Consequently, there was sufficient evidence for the jury to find that defendant jointly possessed the firearm with Jones, and thus, was guilty of committing felon-in-possession. The prosecution's failure to present evidence that Jones committed felon-in-possession was irrelevant because, for the purposes of that crime, defendant did not aid and abet Jones, but rather, acted in concert with him, and was also the principal under the concept of joint possession.

*People v. Watson*, 2019 WL 3315168, at * 9 (internal citations omitted).

In the present case, the evidence was sufficient for a rational trier of fact to conclude that petitioner was acting in concert with co-defendant Jones to rob the victim

14

at gunpoint, thus, the Michigan Court of Appeals reasonably concluded that the evidence supported petitioner's conviction for felon in possession of a firearm under a theory that petitioner and his co-defendant jointly possessed the firearm, with the co-defendant retaining actual possession of the firearm and petitioner retaining constructive possession. *See Hopson v. Horton*, 838 F. App'x. 147, 155 (6th Cir. 2020). Petitioner is not entitled to relief on his third claim.

### D.  Claim # 4. The readback of testimony claim.

Petitioner lastly claims that the trial judge erred in refusing to read back the victim's testimony to the jury. In the alternative, he argues that trial counsel was ineffective in failing to object to the judge's refusal to read back the testimony.

There is no federal constitutional law which requires that a jury be provided with a witness' testimony. *See Bradley v. Birkett,* 192 F. App'x. 468, 477 (6th Cir. 2006). The reason for this is that there is no U.S. Supreme Court decision that requires judges to re-read testimony of witnesses or to provide transcripts of their testimony to jurors upon their request. *See Friday v. Straub,* 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001). A habeas petitioner's claim that a state trial court violated his right to a fair trial by refusing to grant a jury request for transcripts is therefore not cognizable in a habeas proceeding. *Bradley,* 192 F. App'x. at 477; *Spalla v. Foltz,* 615 F. Supp. 224, 233-34 (E.D. Mich. 1985). Given the lack of holdings by the Supreme Court on the issue of whether a state trial judge is required to re-read the testimony of witnesses or provide transcripts of their testimony to jurors upon their request, the Michigan Court of Appeals' rejection of petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

Petitioner in the alternative argues that trial counsel was ineffective for failing to object to the trial judge's refusal to read back the victim's testimony to the jurors.

To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding this claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

*Strickland* states that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 *U.S.* at 690. In the present case, petitioner's ineffective assistance of counsel claim fails, because trial counsel, as a matter of strategy, may have preferred that the jury not re-hear the victim's damaging testimony. *See Bradley,* 192 F. App'x. at 477. Moreover, in light of the fact that the trial court judge indicated that he chose not to read back the victim's testimony, petitioner is unable to show that there would have been a different outcome in the trial had counsel objected to the judge's ruling concerning the re-reading of the victim's testimony. *Id.* Petitioner is not entitled to relief on his fourth claim.

### IV. Conclusion

The petition is denied with prejudice. The Court denies a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To

demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is DENIED WITH PREJUDICE.

IT IS FURTHER ORDERED That a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that Petitioner will be DENIED leave to appeal *in forma pauperis*.

s/ Nancy G. Edmunds\
HON. NANCY G. EDMUNDS\
UNITED STATES DISTRICT COURT JUDGE

Dated: October 7, 2021